Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, March 25, 2010 4:13:45 PM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ANTHONY SHANE BRACKETT | ) Case No. 08-bk-01186 |
| | ) |
| Debtor. | ) Chapter 13 |
| | ) |
| ANTHONY SHANE BRACKETT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 09-00098 |
| | ) |
| CORINTHIAN MORTGAGE | ) |
| CORPORATION, HSBC, and | ) |
| NEW WORLD MORTGAGE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Corinthian Mortgage Corporation ("Corinthian") seeks dismissal of the complaint filed against it by Anthony Shane Brackett (the "Debtor") on the grounds that the complaint fails to state a claim for which relief can be granted. Corinthian asserts that it is a Federal Savings Bank, and, thus, its lending practices are governed by federal statutes and the regulations promulgated by the Office of Thrift Supervision ("OTS"), all of which preempt the Debtor's state law causes of action. Further, Corinthian asserts that all of the Debtor's federal law causes of action expired under applicable statutes of limitations.

For the reasons set forth below, the court will grant Corinthian's motion to dismiss the Debtor's causes of action against Corinthian.

## I. STANDARD OF REVIEW

1

The starting point for the notice-pleading standard in federal courts is Rule 8(a)(2), as made applicable to this proceeding by Fed. R. Bankr. P. 7008(b). Rule (8)(a)(2) requires a complaint to state a claim for relief by presenting "a short and plain statement of the claim showing that the pleader is entitled to relief."

In adjudicating a motion to dismiss for failure to state a claim, a court must accept as true all of the well-pleaded factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This principle, however, is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Defeating a motion under Rule 12(b)(6) requires the plaintiff to provide more in the complaint than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," *id.*, and be enough to "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949.

Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950. Dismissal on the pleadings is appropriate only if the complaint fails to plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" necessary for relief. *Twombly*, 550 U.S. at 555.

## II. BACKGROUND

The Debtor's causes of action against Corinthian[1] arise out of a real estate mortgage transaction, which was executed on March 7, 2005. On that date, the Debtor signed an adjustable rate note in favor of Corinthian in the amount of $ 283,500.00, with interest-only payments for five years. The Debtor executed a deed of trust to Corinthian against the Debtor's residence as security for the promissory note. The Debtor was allegedly charged with $ 6,324.00 in loan origination fees. The Debtor alleges that the transaction on March 7, 2005, took place at a McDonald's restaurant in

---

[1] The Debtor's complaint lists three defendants: HSBC, Corinthian, and New World Mortgage. Only Corinthian has moved to dismiss under Rule 12(b)(6), and, thus, only the causes of action against Corinthian are relevant at this juncture.

2

Inwood, West Virginia, was executed by a broker who was not licensed to close loans in West Virginia, and no attorney supervised the transaction. Further, the Debtor alleges that the loan was originated "with the intent that the loan would not be repaid and that the lender would obtain title to the property through foreclosure."

## III. DISCUSSION

The Debtor's complaint alleges that in executing his loan, Corinthian violated the West Virginia Residential Mortgage Lender, Broker and Servicer Act ("RMLA"), W. Va. Code §§ 31-17-1 et seq. (2009), the West Virginia Consumer Credit and Protection Act ("CCPA"), W. Va. Code §§ 46A-1-101 et seq. (2009), the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. (2009), as amended by the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1639 et seq. (2009). The Debtor seeks damages and rescission of the loan. In response to Corinthian's motion, the Debtor also suggests that his complaint contains an alleged violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. (2009).

Corinthian argues, first, that the Debtor's RMLA and CCPA causes of action are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461 et seq. (2009), and the regulations promulgated under HOLA by the OTS, and, second, that the statute of limitations has run on the Debtor's TILA causes of action. As for the alleged RESPA violations, Corinthian asserts that RESPA provides no private right of action.

The court will address each of Corinthian's arguments in turn.

## A. Corinthian's Status as a Subsidiary of a Federal Savings Bank

Before addressing preemption of state law governing Federal Savings Banks, the court must address whether Corinthian is a Federal Savings Bank.

### 1. Judicial Notice of OTS Website Records

In support of its assertion that it is a Federal Savings Bank, Corinthian has requested the court to take judicial notice of the records contained on the OTS web site. Corinthian has attached a printed screen-shot, which Corinthian asserts was generated from the OTS website. (Def. Brief, Ex. B.) The printout states that Corinthian is a subsidiary of SouthBank, which is shown as being a Federal Savings Bank. *Id.*

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

3

*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Information generated through a government agency's web site falls within Fed. R. Evid. 201(b)(2), and courts have routinely considered such information to be self-authenticating for purposes of Fed. R. Evid. 902(5). *E.g., Curcio v. Wachovia Mortg. Corp.*, Case No. 09-CV-1498-IEG, 2009 U.S. Dist. LEXIS 96155 (S.D. Cal. Oct. 14, 2009) (taking judicial notice of an entity's status as a Federal Savings Bank on FDIC website for purposes of 12(b)(6) motion); *see also, e.g., Williams v. Long*, 585 F. Supp. 2d 679, 689 (D. Md. 2008) (state agency website); *United States EEOC v. E.I. du Pont de Nemours*, 347 F. Supp. 2d 284 (E.D. La. 2004) (U.S. Census Bureau website), *aff'd in part, rev'd in part on other grounds*, 480 F.3d 724 (5th Cir. 2008); *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 233, n.26 (Bankr. N.D. Ill. 2003) (state supreme court web site), *aff'd*, No. 03-C-8023, 2004 U.S. Dist. LEXIS 17637 (N.D. Ill. Aug. 27, 2004).

Here, the court takes judicial notice of the information on the OTS website regarding Corinthian's status as a subsidiary of a Federal Savings Bank. The OTS is a subagency of the Department of the Treasury, and its records are not reasonably subject to dispute. Further, the printout that Corinthian has provided as an exhibit to its motion provides the web address for the information generated through the OTS website, and, thus, in this case, the website record is capable of accurate and ready determination.

### 2. Regulations Applicable to Subsidiaries of Federal Savings Bank

The next question is whether a subsidiary of a Federal Savings Bank is subject to OTS regulations. Under the OTS's regulations, "all federal statutes and regulations apply to operating subsidiaries in the same manner as they apply to" the parent Federal Savings Bank. 12 C.F.R. 559.3(h)(3); *see also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007) (holding that the National Banking Act and regulations promulgated by the Office of the Comptroller of the Currency preempt state regulation of an operating subsidiary of a National Bank); *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 344-345 (6th Cir. 2008) (applying the rationale under *Watters* to subsidiaries of Federal Savings Banks). Thus, in determining whether state laws regulating Corinthian's lending activity are preempted by federal law, the statutes and regulations affecting Corinthian's parent

4

entity, SouthBank, will likewise affect Corinthian, directly.

**B. Preemption**

The doctrine of federal preemption is based upon the Supremacy Clause of the United States Constitution, which provides that federal law "shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. Preemption may be either express or implied, and federal law may supercede state law either completely, under the doctrine of field preemption, or partially, under the doctrine of conflict preemption. *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 151 (1982) (internal quotation marks omitted).

Under the doctrine of field preemption,

> the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.

*Id.* (internal quotation marks omitted).

Under the doctrine of conflict preemption,

> [e]ven where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 153 (internal citations omitted).

In the HOLA context, in particular, the Supreme Court has held that an agency's regulations have the same preemptive effect as the agency's enabling statute. *Id.* When Congress authorizes an agency to exercise discretion, and when that agency promulgates rules intended to preempt state law, the agency's "judgements are subject to judicial review only to determine whether [it] has exceeded [its] statutory authority or acted arbitrarily." *Id.*

HOLA authorizes the Director of the OTS to "exercise all powers granted to the Director under this Act so as to encourage savings associations to provide credit for housing safely and soundly." 12 U.S.C. § 1463(a)(3). Pursuant to its authority under HOLA, the OTS has issued the

5

following rule:

>(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, [12 U.S.C. §§ 1463(a) and 1464(a)], OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations. . . .  To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.
>
>(b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
>
>(1) Licensing, registration, filings, or reports by creditors;
>
>(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;
>
>(3) Loan-to-value ratios;
>
>(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
>(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
>(6) Escrow accounts, impound accounts, and similar accounts;
>
>(7) Security property, including leaseholds;
>
>(8) Access to and use of credit reports;
>
>(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit

6

> solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> (11) Disbursements and repayments;
>
> (12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and
>
> (13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.
>
> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and
>
> (6) Any other law that OTS, upon review, finds:
>
> (i) Furthers a vital state interest; and
>
> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2. The OTS offers the following interpretive guidlines:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This

7

> presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50,951, 50,966-67 (Sept. 30, 1996); *e.g., Casey v. FDIC*, 583 F.3d 586, 594 (8th Cir. 2009) ("[A] state law that on its face is not one described in § 560.2(b) may nevertheless be preempted if, as applied, it fits within § 560.2(b)."). "Thus, 12 C.F.R. § 560.2(a) preempts state laws that have a direct impact on the banking and lending activities of a federal savings association, such as those listed in § 560.2(b), while § 560.2(c) preserves state laws of general applicability that only incidentally affect the banking and lending activities of a federal savings association." *Reardon*, 539 F.3d at 344. The OTS's rule under part 560.2 has been held to be "neither arbitrary nor unreasonable and is within the broad grant of power to the OTS contained in HOLA." *Flagg v. Yonkers S&L Ass'n*, 396 F.3d 178, 182 (2d Cir. 2005), *cert denied*, 546 U.S. 817 (2005); *see also, e.g., Reardon*, 539 F.3d 336.

Each of the Debtor's state-law claims are based on West Virginia statutes that purport to impose requirements regarding items listed under § 560.2(b) of the OTS regulations.

### 1. Counts I & III

Counts I and III contain causes of action based upon the terms of the loan. In both Counts, the Debtor asserts that the terms of the note violate W. Va. Code §§ 31-17-8(m)(7) and 46A-4-109(5)(E), both of which prohibit "terms of repayment which do not result in continuous reduction of the original principal amount of the loan." Counts I and III also assert that in making the loan, Corinthian violated W. Va. Code § 31-17-8(m)(3), which prohibits a lender from "making any . . . mortgage loan with the intent that the loan will not be repaid and that the lender will obtain title to the property through foreclosure . . . ." The OTS, however, has expressly found in part 560.2(b)(4) that HOLA preempts state authority to regulate the "[t]erms of credit, including amortization of loans," and in part 560.2(b)(10) that HOLA preempts state authority to regulate the origination of loans by federal savings and loans institutions. *E.g., Wilkerson v. World Savings & Loan Ass'n*, No. CIV S-08-2168, 2009 U.S. Dist. LEXIS 76539, at *11 (E.D. Cal. Aug. 26, 2009) (dismissing a predatory lending cause of action under state law based on the supremacy of HOLA). The court finds that regulation of the loan terms offered by a federal savings and loan association, and a federal savings and loan association's intent in originating a loan fall squarely within the

8

OTS's authorized rule under § 560.2(b)(4) and (10), respectively. Thus, the state law causes of action against Corinthian in Count I and III are dismissed.

### 2. Counts II & IV

Counts II, which is titled, "ILLEGAL LOAN ORIGINATION/CLOSING" and IV, which is titled "ILLEGAL MORTGAGE SOLICITATION – BROKER," complain that Corinthian's settlement agent was not authorized to close loans under West Virginia law. The CCPA concerning "Credit Services Organizations," W. Va. Code §§ 46A-6C-1 et seq., sets forth requirements for entities that qualify as Credit Service Organizations under § 46A-6C-2(a)(2). The Debtor asserts that Corinthian qualifies as a Credit Service Organization. Even if Corinthian qualifies as such an organization, which has been disputed by Corinthian based upon the exclusion under § 46A-6C-2(b), the requirements under article 6C of Chapter 46A are preempted as applied to federal savings and loans associations. Specifically, the Debtor asserts that Corinthian failed to register with the West Virginia Secretary of State under § 46A-6C-5, to provide disclosures before the real estate closing as required under § 46A-6C-6, and to provide the information and disclosures regarding the terms of the loan as required by § 46A-6C-7.

Because the registration requirements of federal savings and loans associations is an area specifically addressed by the OTS under 12 C.F.R. § 560.2(b)(1), the registration requirements under the CCPA are preempted as applied to Corinthian. *See, e.g., Reardon*, 539 F.3d at 345 (holding that HOLA preempts registration requirements for a federal savings and loan association, including its agents). Likewise, the violations under §§ 46A-6C-6 and 7 are preempted because requirements as to disclosure of loan information is specifically addressed under 12 C.F.R. § 560.2(b)(9). *See, e.g., Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) (preemption of state regulation of loan-related fees and disclosures).

### C. Expiration of TILA Actions

Corinthian argues that the Debtor's causes of action under TILA are time barred. The time limitation for claims for damages is found at 15 U.S.C. § 1640(e), and the expiration period for exercising the right of rescission is found at 15 U.S.C. § 1635(f). A cause of action for damages under TILA must be brought "within one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e), which is "no later than the date the plaintiff enters the loan agreement," *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006). A cause of action to enforce

9

an obligor's right of rescission under TILA "shall expire three years after the date of the consummation of the transaction." 15 U.S.C. § 1635(f).

Here, the Debtor entered into the loan agreement with Corinthian on March 7, 2005, and filed his bankruptcy petition on July 29, 2008. Pursuant to 11 U.S.C. § 108(a)(2), the bankruptcy petition tolled any statutes of limitations running against the bankruptcy estate's causes of action that had not expired by the petition date. The petition date, in this case, however, is beyond even the three-year period for the Debtor's right of rescission, which expired on March 8, 2008. Thus, the Debtor's causes of action under TILA are time barred.

The Debtor argues that his causes of action under TILA should survive under the doctrine of equitable tolling. The doctrine of equitable tolling applies to the one-year statute of limitations period relating to claims for damages under 15 U.S.C. § 1640(e). *Ellis v. GMAC*, 160 F.3d 703, 708 (11th Cir. 1998). However, "unlike the one year limitation on an action for damages, the three year limitation on actions for rescission is not a statute of limitations subject to tolling, but rather it is a statute of repose, which creates a substantive right, not subject to tolling." *In re Cmty. Bank of N. Va. & Guaranty Bank Second Mortg. Litigation*, 467 F. Supp. 2d 466, 481 (W.D. Pa. 2006) (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)).

Even though the doctrine of equitable tolling applies to the one-year period, to withstand a motion to dismiss, the Debtor must set forth facts sufficient to show the necessary elements of the doctrine are present in this case.

> The circumstances under which equitable tolling has been permitted are therefore quite narrow. Equitable tolling has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have also recognized that equitable tolling is appropriate when extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time. Equitable tolling is not appropriate, however, where the claimant failed to exercise due diligence in preserving his legal rights.

*Chao v. Va. DOT*, 291 F.3d 276, 283 (4th Cir. 2002) (internal citations and quotation marks omitted). "[T]he essence of a fraudulent concealment claim is that the plaintiff has been induced or tricked by her adversary's misconduct into allowing the filing deadline to pass." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (internal quotation marks and brackets omitted).

10

Here, the Debtor has set forth no facts that establish fraudulent conduct that could have hindered the Debtor from asserting its rights under § 1640(e). In fact, neither the complaint nor the Debtor's response to Corinthian's motion alleges facts showing that Corinthian engaged in any conduct after the loan closed that misled the Debtor, or showing that Corinthian "took extraordinary steps to prevent him from asserting his rights. Nor does he show that he exercised reasonable diligence in investigating and bringing [his] claims." *Taggart v. Chase Bank USA*, No. 09-3067, 2009 U.S. App. LEXIS 25904, at *4-5 (3d Cir. Nov. 27, 2009) (internal citations omitted). Thus, the court rejects the Debtor's argument that his HOEPA and TILA claims survive the statute of limitations applicable to those actions.

### D. No Private Right of Action Under RESPA

Although the Debtor's complaint does not cite any provision of RESPA, his complaint asserts that Corinthian failed to provide a "Good Faith Estimate." Good faith estimate ("GFE") is a term of art under 12 U.S.C. § 2604(c), and the Department of Housing and Urban Development Regulation X, 12 C.F.R. § 3500.7. Thus, the court construes the failure to provide a GFE as an allegation that Corinthian violated 12 U.S.C. § 2604.

RESPA, however, provides no private right of action for violations of § 2604. *Ridgway v. Novastar Mortg. Inc.*, No. RDB-09-1814, 2009 U.S. Dist. LEXIS 121187, at *11 (D. Md. Dec. 30, 2009); *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1998) (holding that there is no private right of action to enforce the good faith estimate requirements); *c.f.*, *Clayton v. Raleigh Federal Sav. Bank*, 107 F.3d 865 (4th Cir. 1997) (unpublished table decision), *slip opinion available at*, No. 96-1696, 1997 U.S. App. LEXIS 3503 (per curiam) (finding no private right of action under 12 U.S.C. § 2609). Thus, the Debtor's cause of action for failure to provide a GFE under RESPA must be dismissed.

### IV. CONCLUSION

Each of the Debtor's state law causes of action against Corinthian are preempted by HOLA and the regulations promulgated by the OTS. The Debtor's complaint for damages and rescission under TILA is time barred. And no private right of action is provided under RESPA. Thus, all of the Debtor's causes of action against Corinthian in this proceeding will be dismissed.

Pursuant to Rule 7058, the court will enter a separate order consistent with this memorandum opinion.

11